25 N.J. Super. 500 (1953)
96 A.2d 769
EMANUEL ZIEPER, PLAINTIFF-RESPONDENT,
v.
REBECCA ZIEPER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 23, 1953.
Decided May 11, 1953.
*502 Before Judges EASTWOOD, BIGELOW, and JAYNE.
*503 Mr. J. Mortimer Rubenstein argued the cause for appellant.
No appearance for respondent.
The opinion of the court was delivered by JAYNE, J.A.D.
Emanuel Zieper, a young soldier who had perhaps just attained his majority, was returning by train from his home in Paterson, New Jersey, to Fort Jackson, South Carolina. Rebecca Tovsky of New York City, and of like age, was quite adventitiously a passenger on the same train. Doubtless the coordination of their penetrating glances inspired their mutual introductions, for they had not previously met. This casual coincidence initiated a correspondence course of courtship. At their next meeting on May 1, 1942 they were united in marriage.
A summarized account of their subsequent migrations and periods of cohabitation will be somewhat explanatory of the controversial issues which this appeal brings before us.
Immediately after the marriage they cohabited for a few weeks near the camp in South Carolina and then the wife returned to the home of her parents in New York City where, except for a very short absence, she remained and he visited her when on furlough, until he was discharged from military service in December 1945. It would not be a material departure from the facts to state that they have never maintained a home of their own. It is not evident, however, that he is not industrious. Until their ultimate separation they have lived together either in the home of her parents in New York City or in Los Angeles, California, or in that of his sister in Paterson, New Jersey. A child was born of the marriage on August 29, 1946.
In September 1946 her parents moved to Los Angeles. She desired to visit them. In October 1946 he provided her and the child with transportation to Los Angeles, and a few weeks later he joined her there. They remained together with her parents in Los Angeles until the month of January 1947, at which time he alone returned to New Jersey where he has ever since resided.
*504 Subsequent events to which reference may now be chronologically made are significant characteristics of the present litigation.
On October 30, 1947 the wife, who continued to remain with her parents in Los Angeles, instituted an action in the Superior Court of California in and for the County of Los Angeles against her husband for divorce. Service of process in that action was made upon the non-resident husband by publication and mail. The husband did not enter any appearance in that action but instead on November 25, 1947 instituted a suit in the Court of Chancery of New Jersey to enjoin his wife from prosecuting her divorce action in the State of California.
Upon presentation of his complaint to the advisory master on November 25, 1947, an order was made restraining ad interim the further prosecution of the action by the wife and directing her to show cause before the court in Paterson, New Jersey, on January 9, 1948 why the restraint should not continue pendente lite. In pursuance of the terms of the order relative to substituted service copies of the complaint, the attached affidavits, and of the order to show cause containing the ad interim restraint were dispatched by registered mail to the defendant Rebecca Zieper, to her California attorney, and to the Clerk of the Superior Court of California. The copies were received by the clerk of the court and by the defendant's attorney on December 1, 1947, and personally by the defendant on December 2, 1947.
It is significantly observed that the complaint in the Chancery suit contained the following allegations:
"6. By virtue of the foregoing, complainant alleges that his and defendants domicile, ever since their marriage, and up to the present time, has been in the City of Paterson and State of New Jersey and that this state, ever since said marriage and up to the present time, has been their matrimonial domicile; that defendant has deserted complainant and remained away from the matrimonial domicile, to wit, the City of Paterson and State of New Jersey, and said desertion of complainant, by defendant has been wilful, continued and obstinate.

* * * * * * * *
*505 9. In and by the allegations of said California complaint, the defendant herein set up  `II. That for more than one (1) year prior to the commencement of this action plaintiff has been, and now is, a resident of the State of California, and that for more than three (3) months preceding the commencement of the within action plaintiff has been, and now is, a resident of the County of Los Angeles.' Complainant alleges that the said allegations are false in these respects, that said defendant is not and never has been a bona fide resident of the State of California, but is still domiciled, and has been domiciled ever since her said marriage, in the City of Paterson, State of New Jersey aforesaid, by reason of the matters set forth in paragraphs 1, 4, 5, 6 and 8 above, and that said pretended residence claimed by the said defendant in California is in fraud of the said California Court, of the State of New Jersey and of complainant, in that defendant herein is not a bona fide resident of California, is not domiciled in California, and California is not the matrimonial domicile of the complainant and defendant, nor has complainant ever consented that defendant acquire a separate home, nor has complainant ever been guilty of any misconduct toward her so as to cease having the right to object to her acquiring a separate home, nor have complainant and defendant ever been domiciled together as man and wife in the State of California. Complainant alleges that said pretended residence in California is alleged by the said defendant for the purpose of inducing the said California Court to grant a decree of divorce from the bond of said marriage to said defendant herein, who is a resident of this State, for an alleged cause which occurred while the parties were bona fide residents of and domiciled in this state, contrary to the provisions of the statute in such case made and provided, and that, if the said defendant herein shall obtain such a decree from the said California Court, the same will be of no force and effect in this state."
An order continuing the restraint was made on January 27, 1948, a certified copy of which was also received by the defendant and her attorney on or about February 17, 1948. A decree pro confesso was entered on April 26, 1948.
However, the wife continued the prosecution of her action in California in defiance of the restraint, and an interlocutory judgment of divorce was entered therein in her favor on May 28, 1948. On June 25, 1949, "after taking proofs in open court," a final decree was entered in the husband's suit in the Court of Chancery of New Jersey which recites that:
"It further appearing that said interlocutory judgment of divorce was procured by fraud and imposition of defendant herein upon *506 the said Superior Court of the State of California, in and for the County of Los Angeles, in that jurisdiction to determine said cause and suit in the State of California was founded and predicated upon bona fide legal residence of defendant therein, when as a fact from the evidence adduced herein defendant never did establish a bona fide legal residence in said State of California but was and still is domiciled in the State of New Jersey and the marital status of complainant and defendant has always been and now is subject to the jurisdiction of the court of this state * * *".
It was thereby adjudged:
"* * * that the said interlocutory judgment of divorce granted by the Superior Court of the State of California, in and for the County of Los Angeles, dated the 28th day of May, 1948, be and the same is hereby declared to be null, void and of no force or effect in this state; * * *
* * * that the defendant, Rebecca Zieper, and her solicitors, attorneys, counsel, agents and servants, and each and everyone of them, be and they are hereby enjoined and commanded henceforth and forever to desist and refrain from taking any further steps in the prosecution of the action or suit for divorce brought by defendant, Rebecca Zieper, against the complainant herein in the Superior Court of the State of California, in and for the County of Los Angeles, and from taking, obtaining or entering or causing to be taken, obtained or entered, a final judgment of divorce in said action or suit, and prosecuting any other proceedings against the complainant herein for divorce or involving the matrimonial status of the parties hereto, in the State of California or elsewhere than in the State of New Jersey * * *
* * * that any final judgment of divorce taken, obtained or entered, or caused to be taken, obtained or entered by defendant, or her solicitor, attorneys, counsel, agents or servants, in defendant's suit for divorce in the Superior Court of the State of California, in and for the City of Los Angeles, shall be and the same is hereby declared to be null, void and of no force or effect in this state."
It is apparent that the invalidity of the California judgment was adjudged to inhere in the lack of the wife's domicile in that state, probably in recognition of our decisions holding that in the absence of certain exceptions the husband's domicile is in legal contemplation the domicile of the wife. Thompson v. Thompson, 89 N.J. Eq. 70 (Ch. 1918); Rinaldi v. Rinaldi, 94 N.J. Eq. 14 (Ch. 1922); Floyd v. Floyd, 95 N.J. Eq. 661 (E. & A. 1924); Heimler *507 v. Heimler, 129 N.J. Eq. 497 (E. & A. 1941); Shepherd v. Ward, 5 N.J. 92 (1950). A final judgment of divorce had already been entered in that action on June 6, 1949.
On October 27, 1949 the husband, who may hereafter be designated as the plaintiff, instituted in this court the action with which we are now concerned seeking a dissolution of the marriage upon the ground of the defendant's alleged willful, continued, and obstinate desertion since the separation in January 1947. The defendant has chosen to resist the plaintiff's alleged cause of action and by way of counterclaim declares that the plaintiff was the deserter and accordingly prays for the allowance to her of alimony for the support of herself and child in recognition of the judgment of divorce of the California court, or that she be granted a judgment of divorce for the cause of desertion in the present action and a suitable allowance for her maintenance and that of the child.
The trial resulted in the award of a judgment nisi in favor of the plaintiff and the dismissal of the defendant's counterclaim. The custody of the minor child subject to the plaintiff's right of visitation was entrusted to the defendant and a weekly allowance directed to be made by the plaintiff for the support of the child. The defendant prosecutes this appeal, and unfortunately we have not had the aid of either a brief or an answering argument on behalf of the plaintiff-respondent.
In our review of this case our initial concern lodges upon the faith to be accorded the California judgment of divorce in the present litigation and the valid effectiveness of the final decree in the injunction suit in the Court of Chancery of New Jersey.
Our Supreme Court has recently remarked in Ippolito v. Ippolito, 3 N.J. 561, 566 (1950), that:
"* * * The power of courts having equity jurisdiction to enjoin the prosecution of an action in a foreign jurisdiction by a resident of the forum state against another such resident has been liberally exercised to restrain the prosecution by such a resident of a divorce action in another jurisdiction. Some of the *508 usual circumstances in which equitable interference is so exercised include situations where the institution or prosecution of the suit in the foreign jurisdiction is in evasion of the laws of the common domicile; where the attempted establishment by the plaintiff in the foreign divorce suit of a residence or domicile in the foreign jurisdiction is not bona fide but is simulated for the purposes of divorce and in fraud of the jurisdiction of the foreign court and of the rights of the plaintiff in the injunction suit; * * *".
Moreover, there is no doubt that a judgment or decree of divorce rendered in a court of a sister state is subject to collateral attack in the state of the true matrimonial domicile if it was procured upon a fraudulently pretended or sham jurisdictional domicile in the sister state.
We notice that in his bill of complaint in the Chancery suit the complainant prayed (and naturally so at that time) only for injunctive restraint against the prosecution of the California action by his wife and the institution of any divorce action by her in any jurisdiction other than in New Jersey. The bill of complaint was not thereafter amended or supplemented to implicate the validity of the California judgment in conformity with the cautious practice pursued by counsel in Shepherd v. Ward, 5 N.J. 92, 111 (1950); hence it might be suggested that the New Jersey decree nullifying the California judgment is legally vacuous by reason of the absence on that issue of procedural due process.
However, the marriage was in issue in the present case, and there was testimony persuasively evidential of the deceit intentionally practiced upon the California court by the defendant in obtaining her judgment of divorce in that jurisdiction, and we believe that a determination that the California judgment is not entitled to full faith and credit in this State is implicit in the conclusions of the trial judge in the present action.
We have accordingly examined the merits of the causes of action alleged in the plaintiff's complaint and in the counterclaim of the defendant. All uncertainties of fact must be resolved against them. Gordon v. Gordon, 89 N.J. Eq. 535, 537 (E. & A. 1918).
*509 In relation to the reciprocal accusations of desertion, is there any credible proof of the essential element of obstinacy? We think not. The predominant deduction from a consideration of the conduct of the parties and the accompanying circumstances is that neither lamented the separation in January 1947 and its subsequent continuance. He became homesick. She had exhausted her love for him. The plaintiff by his voluntary departure terminated the marital cohabitation and the burden descended upon him in the prosecution of his present action to prove that the defendant during the requisite statutory period deliberately and persistently refused to resume cohabitation with him upon his genuine and sincere solicitation. Goldberg v. Goldberg, 101 N.J. Eq. 284 (E. & A. 1927); Sheeran v. Sheeran, 115 N.J. Eq. 75 (E. & A. 1934); Ayling v. Ayling, 125 N.J. Eq. 46 (E. & A. 1939); Budrick v. Budrick, 6 N.J. Super. 247 (App. Div. 1950).
Similarly the defendant's course of conduct has not evinced any genuine desire to resume the marital relationship with the plaintiff. As early as 1943 she seems to have contemplated a dissolution of the marriage. The trial judge found that while the parties were in California the defendant expressed her refusal to return with him to New Jersey. Moreover her continued prosecution of her divorce action in California admittedly in positive defiance of the injunctive order of our former Court of Chancery constituted justification for precluding her from the recovery of alimony in this action. Shepherd v. Ward, supra. The dismissal of the defendant's counterclaim to the extent that it reflected her own alleged causes of action as distinguished from the claim for the support of the child was warranted.
Assuredly, if the separation of the parties and its continuance were in accord with their mutual wishes, the plaintiff was not entitled to a judgment of divorce on the ground of desertion. A desertion in order to be obstinate must be persisted in against the willingness of the injured party to have the separation concluded. Hall v. Hall, 60 N.J. Eq. 469 (E. & A. 1900). Ordinarily where the husband *510 has voluntarily separated himself from his wife, the law requires, to establish desertion on the part of the wife, some evidence of such a sincere proposal addressed by the husband to his wife as might be reasonably expected to induce her to resume matrimonial cohabitation. Thomas v. Thomas, 113 N.J. Eq. 82, 84 (E. & A. 1933); Howes v. Howes, 125 N.J. Eq. 272 (E. & A. 1939); Glenn v. Glenn, 142 N.J. Eq. 625 (E. & A. 1948).
True, the law does not in all cases impose that obligation upon the husband, particularly where the wife has deserted and it is manifest from the circumstances amid which the desertion occurred that an honest effort on the husband's part to terminate the separation would be unavailing, or, if initially successful, it would result in only a temporary reconciliation. Hall v. Hall, supra; O'Brien v. O'Brien, 103 N.J. Eq. 214, 224 (Ch. 1928), affirmed 105 N.J. Eq. 250 (E. & A. 1929); Laing v. Laing, 110 N.J. Eq. 411 (E. & A. 1932); Minichello v. Minichello, 139 N.J. Eq. 464 (E. & A. 1947); Coyle v. Coyle, 6 N.J. Super. 141 (App. Div. 1950).
Here the plaintiff never provided a home of his own from which it may be said that either departed. The last separation was originated by the plaintiff. The plaintiff acknowledges he never thereafter exerted any effort whatever to communicate with her. We appreciate that the marriage in this case was perhaps too hastily forged to be enduring, and that its dissolution might be mutually advantageous and expedient. While expediency is the science of exigencies, we must be governed by the principles of law.
We do not discover in the transcript of the evidence any proof that the failure of the defendant to cohabit with the plaintiff has been obstinate, much less any semblance of corroboration of that element of proof. We recognize the resemblance between this case and that of Henderson v. Henderson, 134 N.J. Eq. 363 (E. & A. 1944).
The propriety of the allowance for the support of the child of the marriage is not challenged. The award embodied in the judgment therefore remains undisturbed. Vide, *511 Sermuks v. Sermuks, 127 N.J. Eq. 364 (E. & A. 1940); Danzi v. Danzi, 142 N.J. Eq. 662 (E. & A. 1948).
The dismissal of the defendant's counterclaim as to the defendant individually is affirmed. The allowance of the counsel fee to her attorney is likewise affirmed. The judgment nisi granting the plaintiff a divorce is reversed.
BIGELOW, J.A.D. (dissenting).
The California record and decree of divorce, which the wife obtained, are regular on their face and presumably are entitled to full faith and credit in New Jersey. The jurisdiction to grant the divorce was dependent upon the fact that the wife was resident or domiciled in California. The husband can undermine the decree by proving that the wife was not a bona fide resident of California when she began her suit; but the burden that he assumes in his attack on the decree is heavy. Williams v. State of North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1944); Esenwein v. Com. of Pennsylvania ex rel. Esenwein, 325 U.S. 279, 65 S.Ct. 1118, 89 L.Ed. 1608 (1944).
The undisputed evidence in this case shows that the wife, who had been living in New York City, went to California in October 1946 and lived there until June 1949, when she returned to New York. She filed her complaint for divorce October 30, 1947, obtained an interlocutory judgment May 28, 1948, and final judgment of divorce June 6, 1949. During the 2 1/2 years that she was in California, Mrs. Zieper resided in the home of her parents. There is not an iota of evidence that when she began her suit she did not have an intention to remain in California indefinitely. There is no proof that she deceived the court on the subject of domicile. In fact, she presented to the court a copy of her husband's affidavit made in the New Jersey injunction action, in which he set forth at length his side of the matter, denying that she was domiciled in California.
My colleagues seem to be influenced by three factors. The first of these was the injunction forbidding the wife from continuing the prosecution of her divorce action. This *512 injunction she disregarded. For the contempt, she may be liable to punishment; and because of the contempt our courts are justified in refusing to award her alimony or other relief based on the divorce. Shepherd v. Ward, 5 N.J. 92 (1950). But our injunction could not narrow the jurisdiction of the Superior Court of the State of California, or impair its judgment.
The second factor is this: The wife's complaint alleged as grounds for divorce, desertion for one year and cruelty. There is evidence in the present case that the charges were false, and that the wife procured her divorce by perjury. Hence she perpetrated a fraud on the California court. Such fraud does not, however, go to the jurisdiction of the court and at most renders the judgment voidable but not void or subject to collateral attack. 49 C.J.S., Judgments, § 434. If the husband has a remedy, it is an application to the Superior Court of California to open the decree. See Hirsch v. Hirsch, 74 Cal. App.2d 391, 168 P.2d 770 (Cal. D. Ct. App. 1946).
The last basis for the attack on the divorce decree was that, by operation of law, a wife has the same domicile as her husband, and Mrs. Zieper could not, under the circumstances disclosed here, establish a separate domicile. Hence that her domicile has never been in the State of California. That is our New Jersey rule, based on the common law doctrine that husband and wife are one. Shepherd v. Ward, supra, at p. 106.
The Supreme Court of California has been somewhat impatient with this doctrine. McGrew v. Mutual Life Ins. Co., 132 Cal. 85, 64 P. 103 (Cal. Sup. Ct. 1901). The California Civil Code, § 129, expressly provides:
"In actions for divorce, neither the domicile nor residence of the husband shall be deemed to be the domicile or residence of the wife. For the purpose of such an action, each may have a separate domicile or residence depending upon proof of the fact and not upon legal presumptions."
I take it that the State of California has power to establish criteria for determining whether a married woman, actually *513 living there, is domiciled within the state so that her matrimonial status is subject to the jurisdiction of California courts. I am satisfied that the husband has failed to prove that the California court was without jurisdiction, or that the divorce decree is otherwise void, or not entitled to credit in New Jersey.
But under the provisions of N.J.S. 2A:82-25 et seq. must we shut our eyes to the California law because it was not pleaded? Mrs. Zieper's counterclaim set up the California divorce. The answer stated that she "was not a bona fide resident of the State of California and had no legal right to establish a domicile in said state." The allegation of an absence of legal right put in issue the law of California by which the right must be ascertained. Our rules did not permit the counterclaimant to reply, Rule 3:7-1, and so the wife had no opportunity to specify the statute. There was sufficient to allow us to inquire into the California law.